**Charlene BROWN, as Substituted Plaintiff and Personal Representative of
Elvira I. Baker, Respondent,**

v.

**Glen L. WHITAKER and Robert
L. Shirkey, Appellants.**

**Nos. WD 51158, WD 51171.**

Missouri Court of Appeals,
Western District.

April 2, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 28, 1996.

Application to Transfer Denied
Aug. 20, 1996.

Jack B. Roberson, Kansas City, Sylvester Powell, Jr., Kansas City, for appellants.

R.B. Miller, Jr., Kansas City, Phillip Brown, Kansas City, for respondent.

Before SPINDEN, P.J., and SMART and LAURA DENVIR STITH, JJ.

SPINDEN, Presiding Judge.

This is the second time this case appears before this court. This time we consider whether the circuit court obeyed our mandate when we remanded the case to it on September 27, 1994, in *Baker v. Whitaker*, 887 S.W.2d 664 (Mo.App.1994). We conclude that the circuit court did comply with our mandate, so we affirm the circuit court's judgment.

We set out the facts extensively in our first opinion. We repeat only the basic facts here.

A school bus driven by Michael Wagner and owned by D & R Transportation ran over 81–year–old Elvira I. Baker on April 14, 1989. Wagner pleaded guilty to careless driving. While Baker was still in the hospital, she asked Glen L. Whitaker, a lawyer, to visit her to discuss his preparing a will for her and representing her in a lawsuit against D & R Transportation. Whitaker told her that his fee would be 50 percent of the money she received. On July 12, 1989, Whitaker returned to the hospital with a will. Baker told him that State Farm Insurance Company, which insured the bus, had told her in the meantime that it would pay all of her medical expenses. Whitaker made derogatory remarks about State Farm and encouraged her to pursue a lawsuit. Whitaker wrote out a contingency fee contract which Baker signed. It said:

> I hereby hire Glen L. Whitaker and Associates to represent me as my attorneys-at-law and prosecute for me any and all claims for damages and injuries sustained by me resulting from or to result from the D & R Bus Company bus (D & R Bus) carelessly hitting me April 14, 1989, and Mr. Whitaker and his associates' fee

> shall be 50% contingent of any amounts paid me by anyone or any company because of my claims, and court costs and required prosecution of claims or lawsuits shall be paid by me.

Whitaker later agreed with Robert Shirkey to split the attorney fee—⅓ to Whitaker and ⅔ to Shirkey—without informing Baker, although she later became aware that Shirkey was handling her litigation. Shirkey filed a lawsuit for Baker against D & R and Wagner. Shirkey demanded the full amount of insurance coverage, $1 million. State Farm agreed to pay the full amount to settle the lawsuit. After paying $233,000 directly to hospitals for Baker's treatment, State Farm paid Baker and her attorneys $767,000. In December 1990, Baker signed a settlement statement prepared by Shirkey which itemized the litigation expenses and summarized the following amounts:

| | |
|---|---:|
| RECEIVED IN SETTLEMENT | $1,000,000.00 |
| [itemized litigation expenses listed] | |
| TOTAL EXPENSES | $ 1,757.95 |
| NET RECEIVED IN SETTLEMENT | $ 998,242.05 |
| Attorney's Fee per contract (50%) | $ 499,121.02 |
| NET DUE CLIENT | $ 499,121.03 |

At the bottom of the statement were handwritten figures reflecting a deduction for medical expenses from Baker's portion totalling $237,051.84.

Truman Medical Center later sued Baker for $50,838.17 in unpaid medical bills. Baker later received bills from other health providers totalling $38,194.63. Baker then sued Whitaker and Shirkey in April 1992, requesting the court to invalidate the fee agreement as unreasonable and unconscionable. In August 1993, the circuit court entered judgment for Baker for $64,728.30, the amount it determined was the unpaid medical bills at the time of the settlement. The circuit court added $24,304.50 to the judgment amount after learning of an additional unpaid bill. Both sides appealed. In resolving the first appeal, we reversed the circuit court's judgment awarding the plaintiff the amount of the remaining unpaid medical bills. We found the settlement agreement's phrase "amounts paid to me" was ambiguous and remanded the case for "further proceedings to determine the proper amount of attorneys' fees based on 50% of the amount recovered from the settlement." We said:

This will require an interpretation of the phrase "amounts paid to me" in accordance with the principles of law set forth [in the opinion] in order to determine the parties' intention. More to the point, the court must decide whether the agreement contemplated the deduction of medical and nursing care expenses before or after calculating the attorney fees.

We also pointed out to the circuit court that a question remained as to whether a causal connection existed between certain outstanding medical bills and the accident. We remanded to the circuit court to give the parties an opportunity to present evidence as to whether the incurment of medical bills was caused by the accident.

After remand, Baker's representative [1] withdrew a claim that the unpaid medical bills should have been deducted before calculation of the attorneys' fees. She requested judgment for $115,621.02. Shirkey demanded that "evidence ... be presented as to whether the Defendants are liable for payment of disputed medical bills." On April 24, 1995, the circuit court entered judgment for Baker's representative for $115,621.02 without conducting an evidentiary hearing. The circuit court concluded that the phrase, "amounts paid me," required that medical bills totalling $233,000 be deducted from the total settlement before determining attorneys' fees. Shirkey and Whitaker appeal.

Shirkey and Whitaker contend that the circuit court upon remand failed to follow this court's mandate. They contend that the circuit court did not follow the factors and principles outlined by this court for determining the meaning of "amounts paid to me" and did not conduct an evidentiary hearing. We disagree; the circuit court properly followed our mandate.

■ Shirkey and Whitaker insist that our mandate required the circuit court to conduct an evidentiary hearing upon remand. We disagree. In the first appeal, we noted that they should have the right to present evidence to contest the validity of the unpaid medical bills. When Baker's representative

dropped that claim, the need for an evidentiary hearing evaporated.

Shirkey and Whitaker contend that an evidentiary hearing was still required on the issue of the proper interpretation of "amounts paid me." They, however, do not point to any new evidence that the circuit court did not hear in the first case. The contentions in their brief suggest that all of the evidence on the matter had been heard. We fail to see how they were prejudiced by the circuit court's refusal to hold an evidentiary hearing.

Moreover, our mandate did not require an evidentiary hearing on the interpretation of "amounts paid me." We said only that the case was remanded "for further proceedings to determine the proper amount of attorneys' fees based on 50% of the amount recovered from the settlement." We instructed the circuit court that this meant it had "to decide whether the agreement contemplated the deduction of medical and nursing care expenses before or after calculating the attorney fees."

■ The language "remand for further proceedings" does not mean that an additional evidentiary hearing is required. As the court said in *Pinkston v. Ellington,* 845 S.W.2d 627, 629 (Mo.App.1992):

[W]hen a case is remanded "for further proceedings consistent with this opinion" such an order is a simple reversal and remand because every remanded case is remanded for further proceedings in accordance with the appellate court opinion.... Words of that character do not import a direction to the trial court and the remanding order stands exactly as if such language had been omitted.

As the circuit court acknowledged, "proceeding" simply means further judicial action; it does not necessarily mean an evidentiary hearing.

■ Shirkey and Whitaker argue that "[t]he remanding indicated, mandatorily, that a hearing was necessary." We disagree. Again, every remanded case is remanded for further proceedings in accordance with the appellate court opinion. *Id.* Remanding does not equate to hearing.

---

1. Baker died on February 28, 1993.

Shirkey and Whitaker contend that if this court "deemed no further hearing was required, this court would and should have decided the matter and would not have remanded it to the trial court but issued specific directions for execution of its Order." We remanded because unpaid medical bills were in dispute. Without resolution of those claims we could not calculate the proper amount of attorneys' fees. We also remanded so the circuit court could decide whether the agreement contemplated the deduction of medical and nursing care expenses before or after calculating attorneys' fees. Such a determination did not require a hearing. The circuit court, in compliance with our mandate, determined that the medical expenses should have been deducted prior to calculating the attorneys' fees.

Shirkey and Whitaker also argue that the "evidence established conclusively that the parties had agreed upon the proper distribution of the settlement proceeds by executing the settlement statement which showed what the parties had agreed upon what constituted 'amounts paid me.'" They assert that the circuit court's judgment was against the weight of the evidence because "there was no actual evidence for deduction of medical bills before calculation of the fee[.]" We disagree.

■ Shirkey and Whitaker argue that the circuit court and this court (in the first appeal) did not give "due consideration" to the settlement statement executed by Baker or to a doctor's report and testimony that Baker was fully aware that the medical bills were to be paid from her share of the settlement. Both the settlement statement and the doctor's testimony were a part of the record. In essence, Shirkey and Whitaker are rearguing the issues of the first appeal. Where facts are substantially the same on the second appeal, we will apply the doctrine of "law of the case." *Pritt v. Terminal Railroad Association of St. Louis*, 251 S.W.2d 622, 623 (Mo. banc 1952). This court determined that the phrase "amounts paid me" was ambiguous even in light of the settlement statement and the doctor's testimony. Hence, we directed the circuit court to apply our opinion and the rules of contracts in determining the matter. We find no merit to Shirkey's and Whitaker's claim that the circuit court's decision was against the weight of the evidence.

■ Shirkey and Whitaker next assert that the circuit court erred in entering a joint and several judgment against them. They argue that the circuit court entered a joint and several judgment against them "without any statutory or other legal basis for so doing." Baker's representative did not respond to the argument.

We deem the point abandoned and do not consider it. Contrary to Rule 84.04(d), Whitaker and Shirkey cited no case law in support of this point relied on. They did cite case law authority under the point relied on, but this particular issue was a subpoint, and they cited no authority for it. In a case construing a contingency fee contract, this court's Eastern District said, "[P]laintiff does not cite any legal authority under [a] subpoint to support her contention[.] In addition, she does not explain the absence of authority. Thus, this argument does not comport with Rule 84.04(d)." *Smith v. Mann, Poger & Wittner, P.C.*, 882 S.W.2d 164, 167 (1994). *See also Reinhold v. Fee Fee Trunk Sewer, Inc.*, 664 S.W.2d 599, 602 (Mo.App.), *cert. denied*, 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984).

■ Finally, Baker's representative asked this court to declare Whitaker's and Shirkey's appeal to be frivolous pursuant to Rule 84.19 and to grant it $11,562.10 in damages. "An appeal is frivolous if it does not present a justiciable question and is so lacking of merit that it is obviously frivolous." *Dynacon Builders v. Janowitz*, 892 S.W.2d 807, 809 (Mo.App.1995). *See also Means v. Sears, Roebuck & Company*, 550 S.W.2d 780, 789 (Mo.1977). Because it is a drastic remedy, we consider sanctions with extreme caution to avoid chilling an appeal of even slight, colorable merit. *Hawthorne v. Hills*, 861 S.W.2d 337, 342 (Mo.App.1993). As unconscionable as the fee appears to be, we do not believe that all of Whitaker's and Shirkey's points were obviously void of merit. We do not order sanctions.

We affirm the judgment of the circuit court.

LAURA DENVIR STITH, J., concurs.

SMART, J., concurs in separate Opinion.

SMART, Judge, concurring.

I write separately only to comment on one aspect of this matter. The evidence showed that, before an attorney ever talked to Ms. Baker, State Farm had already agreed to pay all of the medical expenses attributable to the injuries she sustained when hit by the bus. Assuming State Farm intended to follow through on this promise, which would have been very logical,[1] the attorneys' efforts accomplished nothing for her in regard to the medical bills. State Farm paid $233,000.00 directly to the medical providers, and then paid the balance to Ms. Baker and her attorneys. The attorneys then sought to allow themselves 50% of all amounts paid pursuant to the State Farm policy, deducting all of the medical bills out of Ms. Baker's portion of the proceeds. It should not be overlooked in the consideration of this case that attorneys are entitled to a contingency fee only to the extent that their work *actually procures* a positive result for the client. See 7A C.J.S. Attorney & Client § 322 (1980).

---

1. It was clear early on that the injuries were serious, and the bus driver admitted driving carelessly.